UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In Re:<br><br>**KINGSBURY CORPORATION,**<br><br>Debtor. | Chapter 11<br><br>Case No. 11-13671 |

## MOTION TO DISMISS CASE

Utica Leaseco, LLC ("Utica"), by its counsel, Nixon Peabody LLP, files this Motion to Dismiss pursuant to Bankruptcy Code Section 1112(b) as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### INTRODUCTION

2. Prior to the Petition Date (defined below), the Debtor voluntarily gave possession and title of certain equipment collateral to Utica, its secured lender. The Debtor voluntarily allowed Utica to prepare Utica's equipment for sale at auction. As such, the Debtor's bankruptcy filing should not be deemed an impediment to the pending auction sale of Utica's equipment.

3. In pleadings filed in this case, the Debtor argues that the automatic stay does apply, because the Debtor had the ability to stop the auction by making contractually-agreed upon adequate protection payments to Utica. Nevertheless, the Debtor failed to make such payments and the Debtor should not now be allowed to stop the auction of Utica's equipment. In the event the Court deems that the scheduled auction may be stayed, the Court should grant Utica relief from the stay, because the Debtor has not offered Utica any adequate protection

13634044.1

payments with respect to the equipment. Moreover, the Debtor's own pleadings indicate that the Debtor will lose a significant amount of money during the first few weeks of this case, thus providing cause for dismissal of this case pursuant to 11 U.S.C. § 1112(b). As such, this case should be dismissed to allow Utica to effectuate the contractually-arranged auction.

## BACKGROUND

4. Prior to the Petition Date, the Debtor voluntarily gave possession and title of certain equipment, which secured Utica's claim, to Utica to prepare for an auction. See Surrender and Forbearance Agreement ("Surrender Agreement"), Exhibit B to Debtor's Motion For Entry of An Order Enforcing the Automatic Stay [Dkt # 3] ¶ (the "Stay Motion") 4(a), page 3 ("Borrower [Debtor] hereby surrenders possession of and title to the Collateral to Lender") (emphasis added).

5. The Debtor voluntarily agreed to allow Utica to conduct an auction after providing Utica with possession and title of the equipment, which equipment is specifically identified in the various Exhibit As to the Debtor's Exhibits A and D to the Stay Motion ("Utica's Equipment").

6. Pursuant to the pre-petition agreements between the Debtor, Utica and Maynards Industries (1991), Inc. ("Maynards"), Maynards, in its capacity as auctioneer, has been preparing Utica's Equipment for an auction scheduled to take place on October, 11, 2011. See Mitropoulis Affidavit at ¶¶ 12, 16 and 27.

7. The Debtor was not operating on September 30, 2011 (the "Petition Date"), does not have title to Utica's Equipment, and needs funding to attempt to restart operations. See Mitropoulis Affidavit at ¶¶ 16, 20.

8. Utica and Maynards have spent four weeks getting the Debtor's facility and Utica's Equipment ready for an auction. See Declaration of Taso Sofikitis, President, US Operations, Maynards Industries, attached as Exhibit A ("Taso Declaration") at ¶ 2.

9. Utica and Maynards have expended $75,000 to $100,000 to ready Utica's Equipment and the Debtor's facility for auction. Taso Declaration at ¶ 3.

10. Further, in connection with the planned auction, and in reliance on the Debtor's execution of the Auction Agreement, Maynards has provided notice of the auction to numerous parties, many of whom would be required to travel great distances to attend to next week's auction. If the Debtor is allowed at the eleventh hour to cause cancellation of the agreed-to auction, Utica and Maynards risk exposure from disappointed bidders.

11. As of the Petition Date, the Debtor's facility and Utica's Equipment were staged not for operations, but in lots for the planned auction sale. Taso Declaration at ¶ 4.

12. Pursuant to the Auction Agreement, attached as Exhibit D to the Stay Motion (the "Auction Agreement"), the only guaranteed payment to Utica from the auction is $1,175,000 (the "Auction Guarantee"). See ¶ 7 of the Auction Agreement.

13. Utica's secured claim is currently higher, but the Auction Guarantee is less than $1,257,819.14, the agreed amount of Utica's debt as of July 14, 2011. See Surrender Agreement Recital G, page 1. Interest has continued to accrue, and Utica has incurred fees and costs since July 14, 2011 of at least $220,000.

14. The Debtor has filed its *Motion for Order: (A) Authorizing the Debtor to Obtain Post-Petition Financing; (B) Granting to Diamond Business Credit, LLC Post-Petition Security Interests; (C) Authorizing the Use of Cash Collateral; (D) Granting Adequate Protection in the Form of Replacement Liens; and (E) Setting a Final Hearing* [Dkt

# 6] ("DIP Motion") in which the Debtor seeks to obtain a loan and use of cash collateral to restart operations.

15. Pursuant to the budget attached to the DIP Motion (the "Budget") the Debtor claimed availability of $125,100.00 and net cash of $46,600.00 on the Petition Date, September 30, 2011. Pursuant to the Budget, the Debtor anticipates having availability of only $46,681.00 and net cash of $1,181.00 as of October 21, 2011. Therefore, the Debtor's own budget figures indicate that the Debtor will have a <u>net operating loss of approximately $125,000 in the first 3 weeks of the case</u> (the Debtor will lose approximately $80,000 in availability and approximately $45,000 in cash). Moreover, the Debtor will only have approximately $48,000.00 in working capital beyond October 21, 2011.

16. Beyond the substantial loss reflected in the Budget, certain other pleadings filed by the Debtor identify even greater losses. The Debtor has filed other motions seeking the ability to utilize $98,000.00 to pay critical vendors,[1] to pay approximately $137,000.00 in wages and related benefits incurred several months ago,[2] and the DIP Motion reflects that the Debtor intends to expend at least $150,000 in fees subject to a carve-out arrangement.[3] The Budget does not necessarily reflect the expenditure of the foregoing $385,000, although there are two miscellaneous line items totaling $245,500.00.

17. This case must be dismissed under Section 1112(b) because, among other reasons, based on the foregoing analysis of the Debtor's operational status and budget, there

---

[1] Motion For Entry of An Order Authorizing Debtor to Pay Prepetition Claims of Certain Critical Vendors and Approving Procedures Related Thereto [Dkt # 9].

[2] Motion for Authority to Pay Pre-Petition Employee Wages, Salaries and Related Items; To Make Payments for Which Payroll Deductions are Made; to Continue Insurance Premium Financing Arrangement with Premium Assignment Corporation and to Make Insurance Payments [Dkt # 5].

[3] For clarity, Utica has not agreed to provide a carve-out to anyone and has not, and does not, consent to any surcharge against Utica's collateral.

13634044.1

is substantial and continuing diminution of the estate and no reasonable likelihood of the Debtor's reorganization.

18. As for Utica, the Debtor seeks this Court's authority to recover title and possession of Utica's Equipment. Utica believes there is no authority to strip title from it.

## DISCUSSION

19. This case should be dismissed for cause.

**A. Dismissal**

20. The Debtor commenced this case after having given possession of and title to Utica's Equipment to Utica, and after agreeing that Utica could conduct an auction in the Debtor's facility on October 11, 2011. The Debtor was not operating on the Petition Date, and the Debtor's own pleadings indicate that its best case operational scenario would result in immediate, substantial harm to the estate of at least $125,000.00.

21. Thus, continuation of this Chapter 11 case serves neither of Chapter 11's "two recognized policies [of] preserving going concerns and maximizing property available to satisfy creditors." *Bank of America Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle Street P'ship*, 526 U.S. 434, 435 (1999).

22. In addition, Section 1112(b) mandates dismissal of this case, because there is both a substantial *and* a continuing diminution of the estate and the absence of a reasonable likelihood of rehabilitation.

   (a) This is sufficient to find both a substantial and continuing loss to the estate. *See* 7 *Collier on Bankruptcy*, § 1112.04 (16th ed., 2011) ("If the estate has sustained a substantial loss following the commencement of the case, or the debtor is operating with a sustained negative cash flow or diminution in asset value after the

commencement of the case, these facts are sufficient to justify a finding of 'substantial or continuing loss to ... the estate.'")(citations omitted).

    (b)    A likelihood of "rehabilitation" means exactly that, there must be a likelihood that the debtor can reorganize and emerge from Chapter 11, not that the debtor can liquidate in Chapter 11. *See id*. ("Significantly, the second part of the test under section 1112(b)(4)(A) requires a reasonable likelihood of 'rehabilitation,' not 'reorganization.' Thus, the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation."). As discussed above, this Debtor cannot rehabilitate for numerous reasons, not the least of which are that it cannot retain possession of its property, which is subject to imminent foreclosure, and it has no cash to fund operations.

23.    The Debtor's own pleadings indicate that the Debtor will suffer substantial losses of at least $125,000 if it is allowed to regain title and possession of Utica's Equipment. Moreover, the Debtor's financial projections show that it will have very limited capital (approximately $48,000) as of October 21, 2011. Therefore, it is clear that there is no likelihood of rehabilitation.

24.    This case should be dismissed pursuant to 11 U.S.C. §1112(b).

13634044.1

WHEREFORE, Utica requests the Court to enter the proposed order attached as **Exhibit B**, dismissing this case and granting such other relief as may be appropriate or just.

Respectfully submitted,

UTICA LEASCO, LLC
By its Attorneys,

Dated: October 4, 2011  /s/ *Daniel W. Sklar*
Daniel W. Sklar, Esquire
BNH #001443
Lee Harrington, Esquire
(Admitted PHV)
Nixon Peabody, LLP
900 Elm Street
Manchester, New Hampshire 03101
Telephone: 603-628-4000
Facsimile: 603-628-4040

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Motion to Dismiss* was served to all parties who are entitled to service in this case.

Dated: October 4, 2011  /s/ *Daniel W. Sklar*
Daniel W. Sklar, Esquire