UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:

| | |
|---|---|
| Kingsbury Corporation | Bk. No. 11-13671-JMD |
| Donson Group, Ltd. | Bk. No. 11-13700-JMD |
| Ventura Industries, LLC | Bk. No. 11-13687-JMD |
| | Jointly Administered |
| Debtors. | |

ORDER (A) APPROVING INCURRENCE OF POST-PETITION DEBT TO DIAMOND BUSINESS CREDIT, LLC IN THE ORDINARY COURSE OF BUSINESS; (B) GRANTING TO DIAMOND BUSINESS CREDIT, LLC POST-PETITION SECURITY INTERESTS; (C) AUTHORIZING THE USE OF CASH COLLATERAL; (D) GRANTING ADEQUATE PROTECTION IN THE FORM OF REPLACEMENT LIENS; AND
(E) SETTING A FINAL HEARING

This matter having come before the Court on the Motion for Order: (A) Authorizing the Debtor to Obtain Post-Petition Financing; (B) Granting to Diamond Business Credit, LLC Post-Petition Security Interests; (C) Authorizing the Use of Cash Collateral; (D) Granting Adequate Protection in the Form of Replacement Liens; and (E) Setting a Final Hearing (the "Motion"), filed by Kingsbury Corporation (the "Debtor"), after such notice and opportunity for hearing as was required under the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, and the Federal Rules of Bankruptcy Procedure, this Court having conducted a preliminary hearing on the Motion on October 6, 2011 (the "Hearing") and considered the evidence admitted at the Hearing, including the testimony of Iris A. Mitropoulis, and after due deliberation and sufficient cause appearing therefore, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1. The Motion is granted on the terms set forth herein. All capitalized terms used but not defined in this Order shall have, for purposes of this Order, the meanings ascribed to such terms in the Motion.

1

2. The Debtor and Diamond are authorized to continue the transactions set forth in the Diamond Loan Documents, in accordance with said documents and with the parties' usual practices as they existed prior to the Petition Date, except as amended below.  The Debtor is authorized to borrow funds, and to make expenditures, substantially as set forth on the budget attached hereto as **Exhibit A**.  Diamond possesses a valid, binding, and perfected security interest in the collateral described in the Diamond Loan Documents, and Diamond's lien on the Debtor's accounts and inventory is a first priority lien.  Diamond shall have a valid, perfected, first-priority lien on all of the Debtor's accounts and inventory in order to secure the Debtor's obligations with respect to post-petition advances made by Diamond pursuant to the Diamond Loan Documents, which lien shall not be subject to any challenge by the Debtor or any trustee appointed in these cases or in any subsequent chapter 7 cases, or any party in interest.

3. The Debtor and Diamond are authorized to enter into an amendment to the Diamond Loan Documents that is substantially similar to the amendment attached hereto as **Exhibit B**.

4. As adequate protection of its interests in property of the estate to, among other things, continue to and further secure Diamond's pre-petition loans and its DIP Loan , the Court authorizes the Debtor to grant a security interest to Diamond (the "Diamond Replacement Lien") in the items of collateral identified in the Diamond Loan Documents, with the Diamond Replacement Lien having the same priority as the security interests granted to Diamond by the Debtor prior to the Petition Date.  In addition, if Diamond becomes entitled to an allowable claim under 11 U.S.C. § 507(a)(2), then Diamond shall have a claim under 11 U.S.C. § 507(b) (the "Diamond Superpriority Claim"), which Diamond Superpriority Claim would (i) have priority over all other claims entitled to priority under §507(a)(2), with the exception of quarterly fees

due to the United States Trustee pursuant to 28 U.S.C. § 1930 and professional fees incurred by the Debtor's professionals.  Notwithstanding the foregoing:  (i) the Diamond Replacement Lien and the Diamond Superpriority Claim shall not attach to or be satisfied from any avoidance actions pursuant to Chapter 5 of the Bankruptcy Code or the proceeds thereof and (ii) the Diamond Collateral, the Diamond Replacement Lien and the Diamond Superpriority Claim are subject to a first-priority carve-out for the benefit of the Debtor's professionals in the amount of $125,000.

5. Diamond has extended credit, and is extending credit pursuant to this Order, in good faith and, accordingly, is, as to all financing extended through and including the entry of a final order on the Motion, entitled to all rights and protections provided pursuant to 11 U.S.C. §364(e).

6. The Court reserves the right to enter such further orders as may be necessary regarding the use of cash collateral to provide for payment of any administrative claims for wage and trade creditors who have supplied goods or services to the Debtor during the period of operation under this order which remain unpaid at the time of termination of authorized cash collateral usage, and which goods or services have created additional collateral for the secured claimant.

7. A final hearing on the Motion is scheduled for October 31, 2011 at 9:30 a.m. at the United States Bankruptcy Court for the District of New Hampshire.  Objections, if any, to the grant of the relief sought by the Motion shall be filed and served not later than three (3) business days prior to such final hearing.

8. This Order shall be deemed effective as of October 6, 2011 at 1:00 PM.

Dated:   October 11, 2011                              /s/   J. Michael Deasy
                                                      _____
                                                      The Honorable J. Michael Deasy
                                                      United States Bankruptcy Judge



10/5/2011 5:25 PM

# KINGSBURY CORPORATION
## Cash Flow 10-04-11

| | | 10/7/2011 | 10/14/2011 | 10/21/2011 | 10/28/2011 | 11/4/2011 | 11/11/2011 | 11/18/2011 | 11/25/2011 | 12/2/2011 | 12/9/2011 | 12/16/2011 | 12/23/2011 | 12/30/2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Opening Available 10-03-11 | $ 102,500.00 | $ 39,683.00 | $ 27,672.00 | $ 50,810.00 | $ 189,889.00 | $ 132,939.00 | $ 116,330.00 | $ 118,431.00 | $ 97,503.00 | $ 229,821.00 | $ 159,058.00 | $ 135,158.00 | $ 112,988.00 |
| | New Invoicing at 85% | $ 13,983.00 | $ 23,389.00 | $ 59,988.00 | $ 174,879.00 | $ 23,800.00 | $ 26,041.00 | $ 20,541.00 | $ 22,372.00 | $ 226,568.00 | $ 26,087.00 | $ 22,950.00 | $ 44,200.00 | $ 19,975.00 |
| | New Collections at 15% | $ 2,700.00 | $ 2,700.00 | $ 3,750.00 | $ 2,700.00 | $ 3,750.00 | $ 6,450.00 | $ 30,660.00 | $ 2,700.00 | $ 3,750.00 | $ 3,750.00 | $ 3,750.00 | $ 39,630.00 | $ 3,750.00 |
| | Reduction in Workers Comp Bond | $ - | | | | | | | | | | | | |
| | Adjusted WE Total | $ 119,183.00 | $ 65,772.00 | $ 91,410.00 | $ 228,389.00 | $ 217,439.00 | $ 165,430.00 | $ 167,531.00 | $ 143,503.00 | $ 327,821.00 | $ 259,658.00 | $ 185,758.00 | $ 218,988.00 | $ 136,713.00 |
| **Invoicing** | | 10/7/2011 | 10/14/2011 | 10/21/2011 | 10/28/2011 | 11/4/2011 | 11/11/2011 | 11/18/2011 | 11/25/2011 | 12/2/2011 | 12/9/2011 | 12/16/2011 | 12/23/2011 | 12/30/2011 |
| | Spare Parts - Stock/Purchased | $ 4,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 |
| | Spare Parts - Manufactured | | $ 5,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 |
| | LInamar | $ 12,450.00 | $ - | | | | $ 7,470.00 | | $ 4,980.00 | | | | | |
| | Chrysler - Parts and Rebuilds | | | $ 25,000.00 | | | | | | | | | $ 25,000.00 | |
| | Nexteer/Briggs | | $ 8,350.00 | $ 7,190.00 | | | | | | $ 8,350.00 | $ 7,190.00 | | | |
| | Rockford Products | | | $ 8,000.00 | | | | | | | | | | |
| | Service Trips | | | $ 6,218.00 | $ 5,000.00 | $ 9,000.00 | | | | | | | | |
| | Subcontract Parts | | $ 4,166.00 | $ 5,166.00 | $ 2,340.00 | | $ 4,166.00 | $ 5,166.00 | $ 2,340.00 | | $ 4,500.00 | $ 8,000.00 | $ 8,000.00 | $ 4,500.00 |
| (1) | New Machine Deposit | | | | $ 179,400.00 | | | | | $ 239,200.00 | | | | |
| | Total | $ 16,450.00 | $ 27,516.00 | $ 70,574.00 | $ 205,740.00 | $ 28,000.00 | $ 30,636.00 | $ 24,166.00 | $ 26,320.00 | $ 266,550.00 | $ 30,690.00 | $ 27,000.00 | $ 52,000.00 | $ 23,500.00 |
| **Payroll** | | $ (12,500.00) | $ (20,000.00) | $ (20,000.00) | $ (20,000.00) | $ (26,000.00) | $ (26,000.00) | $ (26,000.00) | $ (30,000.00) | $ (30,000.00) | $ (30,000.00) | $ (35,000.00) | $ (35,000.00) | $ (35,000.00) |
| **Weekly/Monthly** | | | | | | | | | | | | | | |
| | Insurance (just property) | $ (11,500.00) | | | | $ (7,000.00) | | | | $ (7,000.00) | | | | |
| | State of NH Corporate Tax | | | | | | | | | $ (4,500.00) | | | | |
| | Banks/Leases | $ (500.00) | $ (100.00) | $ (100.00) | $ (500.00) | $ (25,500.00) | $ (100.00) | $ (100.00) | $ (500.00) | $ (25,500.00) | $ (100.00) | $ (100.00) | $ (500.00) | $ (500.00) |
| | Oil/Gas/Phone (incl deposit WK1) | $ (24,000.00) | $ (4,000.00) | $ (6,500.00) | $ (4,000.00) | $ (16,500.00) | $ (6,500.00) | $ (6,500.00) | $ (6,500.00) | $ (19,000.00) | $ (6,500.00) | $ (6,500.00) | $ (6,500.00) | $ (6,500.00) |
| | Prior Week Float | | | | | | | | | | | | | |
| **Vendors - Steel/Commercial** | | $ (15,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (2,500.00) | $ (12,500.00) | $ (12,500.00) | $ (5,000.00) | $ (5,000.00) | $ (60,000.00) | $ (5,000.00) | $ (60,000.00) | $ (5,000.00) |
| **Plant Requirements** | | $ (8,500.00) | $ (4,000.00) | $ (4,000.00) | $ (4,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) |
| **Miscellaneous** | | $ (7,500.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (5,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (5,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) | $ (2,000.00) |
| | | $ (79,500.00) | $ (38,100.00) | $ (40,600.00) | $ (38,500.00) | $ (84,500.00) | $ (49,100.00) | $ (49,100.00) | $ (46,000.00) | $ (98,000.00) | $ (100,600.00) | $ (50,600.00) | $ (106,000.00) | $ (51,000.00) |
| **Net Cash Availabile** | | $ 39,683.00 | $ 27,672.00 | $ 50,810.00 | $ 189,889.00 | $ 132,939.00 | $ 116,330.00 | $ 118,431.00 | $ 97,503.00 | $ 229,821.00 | $ 159,058.00 | $ 135,158.00 | $ 112,988.00 | $ 85,713.00 |

(1) Kingsbury has active quotes outstanding for assembly systems with 2 defense contractors, one OEM in the automotive industry, and 2 Tier 1 suppliers to the automotive industry.  Prices range from $500,000 to $5,00,000.
Quoted terms are 30% with the order and 40% at start of manufacturing or purchasing.  Forecast assumes just one order - the smallest in value ($598,000)
Payroll and commercial are increased to support the machine build.


EXHIBIT B

# FIRST AMENDMENT TO

# LOAN AGREEMENT AND SECURITY AGREEMENT

**Diamond Business Credit, LLC**

LENDER

**Kingsbury Corporation**

BORROWER

As of September 29, 2011

**This First Amendment to Loan Agreement and Security Agreement** (hereinafter, this "Amendment") is made as of the **29th** day of **September, 2011** to that Loan Agreement and Security Agreement dated **October 22, 2007** (as hereby amended and as such may be further amended hereafter, the "Loan Agreement"). Capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Loan Agreement.

This Amendment is made by and between:

**Diamond Business Credit, LLC**, a Massachusetts limited liability company having its principal office at 200 Ledgewood Place, Suite 100, Rockland, MA 02370 (hereinafter referred to as the "Lender")

and

**Kingsbury Corporation**, a New Hampshire corporation with its principal executive office at 80 Laurel Street, Keene, NH 03431 (hereinafter referred to as the "Borrower").

In consideration of the mutual covenants contained herein and benefits to be derived herefrom, the Lender and the Borrower hereby agree to amend the Loan Agreement as specifically set forth herein.

### BACKGROUND

The Lender and the Borrower are parties to the Loan Agreement and the various other security documents (hereinafter, together with the Loan Agreement, the "Security Documents") executed and delivered by the Borrower to the Lender in connection therewith. The Borrower has advised Lender that Borrower intends to file for protection under Chapter 11 of the United States Bankruptcy Code and has requested that Lender agree to a continuation of the financing arrangements set forth in the Security Documents in connection with proposed Debtor-in-Possession ("DIP") financing, amended as set forth herein. The Lender is willing to amend the Loan Agreement in accordance with the Borrower's request, but only upon the terms and conditions specifically set forth in this Amendment. Accordingly, the Lender and the Borrower, subject to the terms and conditions of this Amendment, hereby amend the Loan Agreement and the other Security Documents as may be necessary for consistency, and otherwise agree as follows:

1) <u>Amendments to Loan Agreement</u>.

   a) Lender consents to a post-petition continuation of the financing arrangements set forth in the Loan Agreement, in accordance with the terms of a DIP Financing Motion to be approved by Lender, the Borrower and their respective counsel and by the Bankruptcy Court.

   b) The advance rate on Inventory Loan advances shall be increased to 35%.

   c) The Inventory Loan Limit shall be increased to $300,000.

   d) The Credit Limit is $1,500,000.

2) <u>Effect of this Amendment</u>. This Amendment shall become effective upon the approval of the DIP Financing Motion by the Bankruptcy Court, and (i) except as expressly amended hereby, no other changes or modifications to the Loan Agreement or the other Security Documents are intended or implied and each shall remain in full force and effect in accordance with its respective provisions as originally written on the date hereof; (ii) in all other respects the Loan Agreement and the other

2

Security Documents are hereby specifically ratified, restated and confirmed by all parties hereto; (iii) the Loan Agreement and this Amendment shall be read and construed as one agreement; and (iv) all references to the Loan Agreement in the original Loan Agreement and the other Security Documents shall be deemed to be references to the Loan Agreement as amended hereby.

3) <u>No Waiver of Compliance</u>.  By entering into this Amendment, and except to the extent specifically contemplated and agreed upon as set forth in the DIP Financing Motion and all Exhibits thereto, the Lender has not and shall not be deemed to have (a) waived any Default or Event of Default now existing or which may occur at any time hereafter; (b) limited any of the Lender's rights and remedies with respect to any Default or Event of Default; or (c) except as otherwise expressly set forth herein, limited the Lender's right to require the Borrower to comply strictly with each term and condition of the Loan Agreement or the other Security Documents as amended hereby.

4) <u>Waiver of Claims</u>.  Subject to all applicable provisions of the Bankruptcy Code, the Borrower hereby acknowledges and agrees that it has no offsets, defenses, claims, or counterclaims against the Lender or its officers, directors, employees, attorneys, representatives, parents, affiliates, predecessors, successors, or assigns with respect to the Liabilities, or otherwise (except offsets, defenses, claims or counterclaims arising from deposit accounts and/or securities accounts with the Lender, collectively, "Non-Waived Claims"); and that if the Borrower now has, or ever did have, any offsets, defenses, claims, or counterclaims against the Lender or its officers, directors, employees, attorneys, representatives, affiliates, predecessors, successors, or assigns, whether known or unknown, at law or in equity, from the beginning of the world through this date and through the time of execution of this Amendment, all of them (other than the Non-Waived Claims) are hereby expressly WAIVED, and the Borrower hereby RELEASES the Lender and its officers, directors, employees, attorneys, representatives, affiliates, predecessors, successors, and assigns from any liability therefor.

5) <u>Miscellaneous</u>.

   a) Subject to any required approval of the Bankruptcy Court, the Borrower shall execute and deliver to the Lender such additional documents, instruments, and agreements and take such additional action that the Lender may reasonably require in order to give effect to, and implement the terms and conditions of this Amendment.

   b) This Amendment may be executed and delivered by exchange of facsimile or electronic signatures of the Lender and the Borrower. This Amendment may be executed in several counterparts and by each party on a separate counterpart, each of which when so executed and delivered shall be an original, and all of which together shall constitute one instrument.

   c) This Amendment, the Loan Agreement and the other Security Documents contain the entire understanding between the Borrower and the Lender and supersede all prior agreements and understandings, if any, relating to the subject matter hereof.

   d) The captions at various places in this Amendment are intended for convenience only and do not constitute and shall not be interpreted as part of this Amendment.

[remainder of page intentionally left blank]

3

IN WITNESS WHEREOF, the parties have executed this First Amendment to Loan Agreement and Security Agreement by their respective duly authorized officers.

| **Lender** | **Borrower** |
|---|---|
| Diamond Business Credit, LLC | Kingsbury Corporation, Debtor-in-Possession |
| _____ | By:_____ |
| George P. Gochis, President | Name:  Iris Mitropoulis, President |

4