Steven C. Reingold (BNH 06128)
JAGER SMITH P.C.
One Financial Center
Boston, Massachusetts 02111
telephone: (617) 951-0500
facsimile: (617) 951-2414
email: sreingold@jagersmith.com

Counsel to the Official Committee of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| KINGSBURY CORPORATION *et al.*,[1] | ) | Case No. 11-13671-JMD |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION FOR ORDER: (A) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING; (B) GRANTING TO DIAMOND BUSINESS CREDIT, LLC POST-PETITION SECURITY INTERESTS; (C) AUTHORIZING THE USE OF CASH COLLATERAL; (D) GRANTING ADEQUATE PROTECTION IN THE FORM OF <u>REPLACEMENT LIENS; AND (E) SETTING A FINAL HEARING</u>**

The Official Committee of Unsecured Creditors (the "**Committee**") of Kingsbury Corporation and its affiliated debtors (collectively, the "**Debtors**") hereby objects (this "**Objection**") to the allowance on a final basis of the *Motion for Order: (A) Authorizing the Debtor to Obtain Post-Petition Financing; (B) Granting to Diamond Business Credit, LLC Post-Petition Security Interests; (C) Authorizing the Use of Cash Collateral; (D) Granting Adequate*

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are Kingsbury Corporation (9934), Ventura Industries, LLC (2563) and Donson Group, Ltd. (4306).

340107_7

*Protection in the Form of Replacement Liens; and (E) Setting a Final Hearing* [ECF No. 6] (the "**Borrowing Motion**").[2]

As is set forth in detail herein, the Committee objects to the Borrowing Motion for several reasons, including but not limited to the following:

- while absent from the Borrowing Motion, the amendment (the "**Amendment**") to the existing *Loan and Security Agreement* dated October 22, 2007 by and between Diamond and Kingsbury Corporation ("**Kingsbury**") (as amended, the "**Pre-Petition Loan Documents**") grants Diamond Business Credit, LLC ("**Diamond**") a broad release without providing a minimum of sixty days for the Committee to investigate and assert claims, if any, against Diamond on behalf of the Debtors' estate;

- the Borrowing Motion exposes the Debtors' estate to a risk of administrative insolvency, due to a potential insufficiency of the amounts of the post-petition financing sought and of the amounts necessary for wind-down costs and expenses, and due to the absence of any funding for confirming a plan of liquidation or a plan of reorganization; and

- the Borrowing Motion proposes unjustifiably disproportionate funding to the Committee and its professionals, despite the significant fact that the terms of the Borrowing Motion are such that it will fall upon the Committee to investigate and raise any challenges to Diamond's pre-petition claims.

In further objection to the Borrowing Motion, the Committee respectfully states as follows:

*Pertinent Procedural History*

1. On September 30, 2011 (the "**Petition Date**"), the Debtors each filed a *Voluntary Petition* for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). Since the Petition Date, the Debtors have continued in the possession of their assets and in the operation of their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

---

[2] Capitalized terms used but not defined in this Objection shall have the meanings ascribed to them in the Borrowing Motion or the exhibits thereto.

2. Also on the Petition Date, the Debtors filed, as one of their many "first day" motions, the Borrowing Motion, pursuant to which they seek, along with other related relief, authorization to incur post-petition indebtedness to Diamond in the form of the Amendment, all on a secured and super-priority administrative priority basis, and to use the cash collateral of Diamond and its other pre-petition secured lenders, in the amounts set forth in the Budget.

3. On October 11, 2011, the Court entered an interim *Order (A) Approving Incurrence of Post-Petition Debt to Diamond Business Credit, LLC in the Ordinary Course of Business; (B) Granting to Diamond Business Credit, LLC Post-Petition Security Interests; (C) Authorizing the Use of Cash Collateral; (D) Granting Adequate Protection in the Form of Replacement Liens; and (E) Setting a Final Hearing* [ECF No. 97] (the "**Interim Financing Order**"), which granted the relief requested in the Borrowing Motion on an interim basis.

4. On October 18, 2011, the Office of the United States Trustee (the "**U.S. Trustee**") formed the Committee pursuant to Section 1102 of the Bankruptcy Code. Notably, the Committee was not formed until after the Court entered the Interim Financing Order which, if carried through to a final order, would substantially impair the rights of the unsecured creditors whose interests the Committee represents.

### *The Committee's Objections to the Borrowing Motion*

5. The Committee respectfully submits that the Court should deny the Borrowing Motion, and should decline to approve the proposed Amendment on a final basis, because the Debtors have not met their burden of proving the terms thereof are fair, reasonable and adequate under the circumstances. *See In re Crouse Group, Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987); *see also In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 39 (Bankr. S.D.N.Y. 1990). Bankruptcy courts should not authorize post-petition financing when the primary or only benefits

of that financing inure not to the debtor and the debtor's estate, but to the proposed lender itself. *See Ames*, 115 B.R. at 37-39; *see also In re Tenney Village Co.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989). Post-petition borrowing arrangements are not proper in Chapter 11 proceedings when their credit terms prohibit or otherwise refuse to make funding available for the debtor or a creditors' committee to pursue claims or defenses against that lender, *Ames*, 115 B.R. at 38, or that do not provide a carve out from that lender's liens and administrative priority positions sufficient to preserve the adversarial system. *Id.* Likewise, post-petition borrowing arrangements that incorporate waivers and releases of claims against the proposed lender are not fair and reasonable when they are not supported by lender concessions sufficient to permit a debtor, a creditors' committee or their respective professionals to engage the lender in the adversarial context when appropriate. *Id.*[3]

6. As is set forth in the Borrowing Motion, the DIP Financing is intended to restart and fund the Debtors' operations through December 31, 2011. On October 24, 2011, the Debtors filed an application [ECF No. 117] to retain an investment banker to market all or substantially all of Kingsbury's assets. The Debtors have not yet filed their respective *Schedules of Assets and Liabilities* and *Statements of Financial Affairs* and, at this time, there is no indication that the proceeds of one or more sale transactions will exceed the sum of the secured post-petition obligations and the secured pre-petition obligations. As such, the Borrowing Motion and anticipated sale motion may not have a reasonable prospect of generating a return of any benefit to the Debtors' estate.

---

[3] The Borrowing Motion does not disclose that the Amendment contains, nor does it request approval of, a general release in favor of Diamond. The Debtors offer no justification for the release, which failure is troubling in the absence of sufficient disclosure and a specific request in the Borrowing Motion. *See generally In re Metromedia Fiber Network, Inc.*, 16 F.3d 141-143 (2d Cir. 2005).

7.      Diamond has committed to providing the Debtors with only enough post-petition loans and cash collateral to permit the Debtors to operate through December 31, 2011 in order to facilitate a sale of Kingsbury's assets, including the Diamond Collateral, but not a reorganization or wind-down of the Debtors' business operations, with presumably an unfunded conversion or dismissal to occur after the sale of the Diamond Collateral.  Diamond should not be permitted to obtain the benefits of a Chapter 11 process without a commitment to that process or a concomitant benefit to the Debtors' unsecured creditors.

8.      The Borrowing Motion further attempts to limit the Committee's ability to perform its statutory duties by neglecting to provide any budgeted amount for the Committee's professionals.  Other Chapter 11 expenditures are noticeably absent from the Budget, including Chapter 11 fees payable to the U.S. Trustee.  Similarly, the proposed Carve-Out, as described in the Borrowing Motion, is limited to Debtors' professionals only.  These omissions from the Budget call into question whether the proposed Budget is sufficient to pay all administrative expenses during the pendency of the Debtors' cases.  Absent assurance of the same, the Court should not grant the Borrowing Motion.

9.      Because the Borrowing Motion seeks authorization for the Debtors to incur post-petition indebtedness and use cash collateral to prolong their existence only long enough to dispose of the Diamond Collateral, the Court should decline to approve it on a final basis.  Post-petition bankruptcy financing is intended to facilitate the Chapter 11 process, not to circumvent that process, and a post-petition financing arrangement should not be approved if its purpose is simply to

> pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit of the [b]ank and the Debtor's

> principals who guaranteed its debt. It runs roughshod over numerous sections of the Bankruptcy Code[.]

*Tenney Village*, 104 B.R. at 568; *see also Ames*, 115 B.R. at 38. A Chapter 11 case such as this one—filed solely to permit secured lenders and to liquidate their Collateral and obtain what are in effect releases from the Debtors—is not an appropriate use of the Chapter 11 process. *In re MacFarlane Webster Assoc.*, 121 B.R. 694, 703-04 (Bankr. S.D.N.Y. 1990) (inappropriate use of Chapter 11 process when beneficial only to mortgagee and without any benefit to creditors or funds for distribution); *In re Fremont Battery Co.*, 73 B.R. 277, 279 (Bankr. N.D. Ohio 1987) (sale motion denied when no benefit accrues to estate, but rather solely to one creditor); *In re FJD, Inc.*, 24 B.R. 138, 141 (Bankr. D. Nev. 1982) (Chapter 11 process abused when virtually all indebtedness runs to secured creditors, and no equity in property to benefit unsecured creditors).

10. Similarly, the Borrowing Motion neglects to provide, at a minimum, a sixty-day period for the Committee to investigate the estate's claims, if any, against Diamond and, if necessary, to object to Diamond's pre-petition liens and claims, or otherwise assert causes of action against it.[4] Pursuant to Rule 4001-2(c)(2) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of New Hampshire (the "**Local Bankruptcy Rules**"), provisions to the contrary are required to be highlighted and justified. No such description or justification was provided in the Borrowing Motion.

---

[4] The Committee has not yet concluded whether any claims exist against Diamond or the other pre-petition secured lenders. The purpose of the challenge period accorded to the Committee is to undertake a due investigation to ensure that no such claims exist prior to their release. *See Adelphia Communications Corp. v. Bank of America, N.A. (In re Adelphia Communications Corp.)*, 330 B.R. 364 (Bankr. S.D.N.Y. 2005) (noting with approval order granting official committee standing and sufficient time to investigate lenders' liens for all parties with interest in reorganization).

*Motion Practice*

11.     Because the statutory provisions and authorities relied upon in support of this Objection are set forth herein, the Committee submits that this Objection satisfies the requirement of Local Bankruptcy Rule 7102(b)(2).

*Conclusion*

12.     For the reasons set forth herein, and for any other reasons the Committee may state on the record at the hearing to be held in respect of the Motion, the Court should deny the Borrowing Motion.

Dated: October 30, 2011                JAGER SMITH P.C.

/s/ Steven C. Reingold
_____
Steven C. Reingold (BNH 06128)
One Financial Center
Boston, Massachusetts 02111
telephone: (617) 951-0500
facsimile: (617) 951-2414
email: sreingold@jagersmith.com

Counsel to the Official Committee
of Unsecured Creditors